COURT OF APPEALS OF VIRGINIA


Present:  Judges Kelsey, Haley and Beales
Argued by teleconference


JERRY D. ROGERS
                                                          OPINION BY
v.      Record No. 0608-07-1                    JUDGE JAMES W. HALEY, JR.
                                                          FEBRUARY 12, 2008
DEBORAH N. ROGERS


            FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
                          William H. Shaw, III, Judge

            S. Neil Stout (Michael W. Bohner; Stout, Billy & Seli, P.C., on
            brief), for appellant.

            Breckenridge Ingles (Martin, Ingles & Ingles, Ltd., on brief), for
            appellee.


        In this appeal concerning spousal support, the various assignments of error by Jerry D.

Rogers (husband) are interdependent.  We consolidate those necessary for present resolution.

Husband contends the trial court:  (1) erred in finding husband had not presented evidence of

prior business expenses at an earlier hearing to permit a comparison with current business

expenses, and (2) erred in considering husband's pending bankruptcy proceeding in determining

present spousal support.  We reverse and remand for a new hearing consistent with our decision,

upon such evidence as the parties may then adduce.[1]  We deny wife's request for costs and

attorney fees associated with this appeal.

_____

        [1] Husband further assigned as error the trial court's determination as to wife's needs, his
ability to pay, and the failure to more substantially reduce support.  Because of our remand, we
need not address these issues.

FACTS AND ANALYSIS

We recite only those facts necessary for resolution of the consolidated issues.

A. Business Expenses

A divorce decree entered October 19, 2005 reserved the issue of spousal support for a further hearing.[2] A portion of that decree is here relevant. The trial court stated it received "the representation of counsel that matters of equitable distribution have been compromised, settled and agreed."[3] The October 19 decree, endorsed without objection as to equitable distribution provisions, contains the following concerning the joint credit card debt of the parties: "8. Debt: . . . The BB&T credit card debt and the debt associated with the MBNA Visa credit card . . . are hereby assigned to [husband]. [Husband] shall be responsible for the timely payment of the foregoing debts."[4] The decree also contains a provision, likewise relevant, granting title to the marital residence to wife, subject to existing mortgages upon the same.

The hearing on spousal support was held on November 2, 2005, resulting in a letter opinion dated December 22, 2005 incorporated in a decree of February 10, 2006. The transcript of the November hearing recites extensive testimony concerning "Jerry's Bushhog Services" and the introduction of documentary evidence of gross income and tax returns associated with this business. The trial court's letter of December 22 states in part:

> His [husband's] 2004 business receipts indicate an average gross
> monthly income exceeding $9,000.00. In a loan application in
> May 2004, he reported his gross monthly business income as
> $8,000.00. 2005 business records show his average monthly

---

[2] This decree incorporated a level of spousal support that had been set in a *pendente lite* proceeding in July 2004.

[3] The transcript reciting this agreement does not appear in the record.

[4] Oral property settlement agreements are valid where the agreement is "'contained in a court order endorsed by counsel or the parties.'" Gaffney v. Gaffney, 45 Va. App. 655, 667, 613 S.E.2d 471, 477 (2005) (quoting Code § 20-155).

> deposits exceed $9,500.00. . . . Recognizing from his earlier tax
> returns that he would have legitimate business expenses, I
> nevertheless conclude that his monthly business income, after
> expenses, is $6,000.00 . . . .

In finding as a fact that husband's net business income was $6,000 per month, the trial court discerned his monthly business expenses, based on the three figures cited as gross income, to range from $2,000 to $3,500, or an average of $2,750 per month.

Husband subsequently filed a motion to reduce spousal support, and the same court that had heard the matter which resulted in the February 10, 2006 decree held a hearing on the same on November 1, 2006. Husband again offered evidence as to the income and expenses of his business.

By letter opinion dated December 4, 2006, the trial court concluded there had been a change in circumstances justifying spousal support modification, and recited husband "has submitted documentation of his current [business] expenses and income." But, though repeatedly referring to its earlier opinion letter of December 22, 2005, the trial court continued:

> The difficulty with [husband's] argument is that there is not also
> an explanation of former expenses with which to compare his
> current expenses. . . . To allow his current submission of expenses
> to govern without reference to former expenses would effect no
> more than a rehearing of the original award . . . . No reduction,
> therefore, will be based upon his "increased" expenses.

This letter opinion was incorporated in a February 8, 2007 decree, the one here challenged.

While the evidence presented at the instant hearing was not the same type of evidence presented at the November 2, 2005 hearing, the trial court did not need the same type of evidence for comparison, but only monetary amounts of business expenses. Thus, having earlier concluded monthly business expenses ranged from $2,000 to $3,500, the trial court erred when it concluded that it could not compare the earlier expense figures with the newly provided expense figures.

- 3 -

## B. Effect of Pending Bankruptcy

Succinctly stated, the November 1, 2006 hearing showed that husband had not paid that portion of husband's assigned joint debt in the property settlement agreement in the amount of $15,648 on the MBNA Visa card and had filed for Chapter 7 bankruptcy protection with respect to the same. Though filed in August 2006, that bankruptcy proceeding was still pending at the time of oral argument before this Court. There is no evidence of a pending objection to this discharge nor was there evidence of any claim by the creditor against wife for her obligation on the husband's assigned joint debt. Also relevant is the fact that since the prior hearing, wife had sold the marital residence and accordingly had liquid assets.

In its letter opinion of December 4, 2006 the trial court wrote: "Although the bankruptcy proceeding is not complete, based on the evidence before me I am assuming [husband] will realize the discharge. Therefore any increased liquidity or return on capital that [wife] gains is then offset by the increased likelihood that she will bear the debt."

This letter opinion makes clear that the trial court in part made its determination of spousal support upon two assumptions: (1) that husband's assigned joint debt would in fact be discharged in bankruptcy, and (2) that the creditor would in fact pursue wife for collection of the same. Husband argues both assumptions are too speculative for proper consideration in setting spousal support, and, further, that the trial court erred in considering bankruptcy at all in its determination because that court "would in effect be violating the constitutional principle of preemption which gives the bankruptcy court the exclusive authority over bankruptcy." We agree with the first argument, but not the second.

The Court first addresses whether the circuit court could use the fact of husband's bankruptcy in determining the level of spousal support payments without interfering with the

- 4 -

jurisdiction of the federal bankruptcy court. The parties disagree over the significance of several of our precedents.

In Mosley v. Mosley, 19 Va. App. 192, 194, 450 S.E.2d 161, 162-63 (1994), the bankruptcy court granted the husband a discharge of marital debts. The circuit court granted a lump sum spousal support award, but it was clear the judge intended to compensate the wife for the husband's share of the marital debt. Id. at 196-97, 450 S.E.2d at 164. This Court found this impermissible, holding the award "would, in effect, serve to circumvent the discharge granted by the federal bankruptcy court." Id. at 197, 450 S.E.2d at 164.

A similar situation occurred in Fleming v. Fleming, 32 Va. App. 822, 825-26, 531 S.E.2d 38, 40 (2000). In that case, the wife eliminated her share of marital debts in bankruptcy. Id. at 823-24, 531 S.E.2d at 39. The circuit court granted the husband a lump sum spousal support award in the amount of marital debt the wife discharged in bankruptcy. Id. at 826, 531 S.E.2d at 40. Like Mosley, the Court found this an impermissible intrusion upon the jurisdiction of the bankruptcy court. Id.

On the other hand, this Court upheld modification of spousal support based on bankruptcy in Dickson v. Dickson, 23 Va. App. 73, 474 S.E.2d 165 (1996). The circuit court there found the husband's bankruptcy and discharge of the equitable distribution award represented a material change in circumstances justifying modification of spousal support. Id. at 82, 474 S.E.2d at 169. On appeal, the husband argued that, as in Mosley and Fleming, the circuit court punished him for using the bankruptcy system. Id. at 81, 474 S.E.2d at 169. In examining the issue, this Court noted that allowing bankruptcy to establish a change in circumstances for modifying spousal support competes with the federal interest in relieving debtors of their obligations and providing them with a new beginning. Id. at 83, 474 S.E.2d at 170. Yet the Court quoted Siragusa v. Siragusa, 843 P.2d 807 (Nev. 1992), for the notion that

- 5 -

"'[m]odification of an alimony award based upon a discharged property settlement obligation does not re-create a debt discharged under federal bankruptcy laws'" and therefore bankruptcy could be considered in modifying alimony. Dickson, 23 Va. App. at 83-84, 474 S.E.2d at 170 (quoting Siragusa, 843 P.2d at 813). This Court then held that "the discharge in bankruptcy of a property settlement agreement or equitable distribution award may be considered as a change in circumstances justifying the modification of spousal support obligation." Id. at 84, 474 S.E.2d at 171.

These cases are reconcilable. A court may not order a lump sum spousal support award to compensate a non-debtor spouse for the other spouse's discharge of marital obligations in bankruptcy. This would "re-create a debt discharged under federal bankruptcy laws" and impermissibly intrude upon federal bankruptcy jurisdiction. Mosley, 19 Va. App. at 197, 450 S.E.2d at 164; Siragusa, 843 P.2d at 813. However, where a material change in circumstances due to bankruptcy otherwise occurs, a court may modify a spousal support order. Dickson, 23 Va. App. at 85-86, 474 S.E.2d at 171.

The Court concludes the consideration of husband's pending bankruptcy in this case did not impermissibly intrude upon the jurisdiction of the bankruptcy court pursuant to Mosley and Fleming. The situation here is more analogous to Dickson. The circuit court's December 22, 2005 letter opinion and February 10, 2006 decree regarding spousal support obviously did not reflect bankruptcy concerns since husband did not file for bankruptcy protection until August 2006. The circuit court could later consider a shift in debt that the parties' agreement and the divorce decree assigned to husband in deciding whether to decrease husband's spousal support obligations.

Having found consideration of bankruptcy proceedings that shift debt from husband to wife does not intrude upon the bankruptcy court's jurisdiction, the Court next considers whether

- 6 -

the circuit court erred in assuming husband would receive a discharge of $15,648 in credit card debt owed jointly with wife when the bankruptcy proceedings had yet to conclude. As acknowledged by both of the parties, a spousal support award must have its basis in current circumstances. Poliquin v. Poliquin, 12 Va. App. 676, 679, 406 S.E.2d 401, 403-04 (1991). Furthermore, a circuit court may not base an award on speculation of future events. Donnell v. Donnell, 20 Va. App. 37, 41, 455 S.E.2d 256, 258 (1995). However, courts may consider reasonably foreseeable events. Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990).

This Court thoroughly discussed how potential future circumstances should affect awards of spousal support in Keyser v. Keyser, 2 Va. App. 459, 461, 345 S.E.2d 12, 14 (1986). The Court stated as follows:

> In reviewing awards of spousal support, the Virginia Supreme Court has held that in fixing the amount of the award, courts may not consider funds the obligor may receive in the future. Jacobs v. Jacobs, 219 Va. 993, 995, 254 S.E.2d 56, 58 (1979); Robertson v. Robertson, 215 Va. 425, 428, 211 S.E.2d 41, 44 (1975). In these cases, the court noted that needs and capacities change as circumstances change and that these changes are not always fairly predictable. Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur. Cf. Thomas v. Thomas, 217 Va. 502, 505, 229 S.E.2d 887, 889-90 (1976).
>
> In Jacobs, the court reversed the portion of a divorce decree that fixed a future increase in a spousal support award contingent upon an increase in the obligor's income. The court noted that an award based upon the occurrence of an uncertain future circumstance ignores the design and defeats the purpose of the statutory scheme, recognizing that "comparative needs and capacities change as circumstances change, that changes are not fairly predictable, and that spousal support awards must be determined in light of contemporary circumstances and then, if necessary, redetermined in light of new circumstances." 219 Va. at 995, 254 S.E.2d at 58.

Keyser, 2 Va. App. at 461, 345 S.E.2d at 13-14. Hence, where a party may encounter better financial circumstances in the future, a circuit court should determine spousal support without considering the possibility of these circumstances and then modify the support award if the favorable circumstances come to fruition. Id.

The bankruptcy laws provide for a liberal discharge of debt under Chapter 7, under which husband has filed. As one federal court stated, the bankruptcy laws provide "that a discharge under Chapter 7 relieves a debtor of all debts incurred prior to the filing of a petition for bankruptcy, except those nineteen categories of debts specifically enumerated in 11 U.S.C. § 523(a)." Rittenhouse v. Eisen, 404 F.3d 395, 396 (6th Cir. 2005).

One of those categories relevant here is § 523(a)(15). Congress substantially amended the law in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23.[5] The new version of § 523(a)(15) prohibits discharge of the following debt:

> to a spouse, former spouse, or child of the debtor . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15).[6] "The plain language of the statute provides that all debts [meeting the statutory criteria of § 523(a)(15)] . . . are . . . nondischargeable." Douglas v. Douglas (In re Douglas), 369 B.R. 462, 464 (Bankr. E.D. Ark. 2007).

---

[5] The BAPCPA applies to cases commenced on or after October 17, 2005. Americredit Fin. Servs. v. Nichols (In re Nichols), 440 F.3d 850, 857 n.6 (6th Cir. 2006). It therefore applies to husband's bankruptcy proceedings.

[6] The amendments added the words "to a spouse, former spouse, or child of the debtor" and deleted two exceptions that permitted a debtor to discharge debt that was otherwise nondischargeable under this section.

Although the statute speaks of debts "to a spouse, former spouse, or child of the debtor," courts have held that joint credit card debt allocated to one spouse in a property settlement agreement or court decree may fall within the scope of the statute.[7]  As the Douglas court noted, "in the case of an obligation to pay a debt owed to a third party, it is the obligation to hold the spouse or former spouse harmless that is presumptively nondischargeable under this section." Id. at 463 n.2.  "The statute does not impose a 'direct pay' requirement." Johnston v. Henson (In re Henson), 197 B.R. 299, 303 (Bankr. E.D. Ark. 1996).  In Schweitzer v. Schweitzer (In re Schweitzer), 370 B.R. 145, 152 (Bankr. S.D. Ohio 2007), the court held that joint credit card debt "falls squarely within the exception to discharge set forth in § 523(a)(15)--it is debt incurred in connection with a separation agreement."  In other cases, the debtor did not even contest the conclusion that § 523(a)(15) could prevent the discharge of joint credit card debt.  Messenger v. Messenger (In re Messenger), 331 B.R. 733, 738 (Bankr. N.D. Ohio 2005); Erd v. Erd (In re Erd), 282 B.R. 620, 623 (Bankr. N.D. Ohio 2002); Kennard v. Kennard (In re Kennard), 259 B.R. 146, 151 (Bankr. W.D. Mo. 2001).

While jointly held debt may qualify for discharge under § 523(a)(15), the debt must have the legal status of "nothing more or less than an enforceable obligation" to meet the bankruptcy code's definition of debt.  Gibson v. Gibson (In re Gibson), 219 B.R. 195, 202 (B.A.P. 6th Cir. 1998).  "The validity of a creditor's claim is determined by rules of state law." Grogan v. Garner, 498 U.S. 279, 283 (1991).  Likewise, "the creation and enforceability of obligations in a divorce settlement are governed by state law." Carlisle v. Carlisle (In re Carlisle), 205 B.R. 812,

---

[7] The addition of the words "to a spouse, former spouse, or child of the debtor" did not significantly alter the statute since most courts read the previous statute to contain this limitation based on the legislative history.  See Ashton v. Dollaga (In re Dollaga), 260 B.R. 493, 497 (B.A.P. 9th Cir. 2001); Savage, Herndon & Turner v. Sanders (In re Sanders), 236 B.R. 107, 110 (Bankr. S.D. Ga. 1999); Woloshin, Tenenbaum & Natalie, P.A. v. Harris (In re Harris), 203 B.R. 558, 562 (Bankr. D. Del. 1996).  Thus, aside from the two exceptions to discharge the BAPCPA deleted, case law discussing the prior version of § 523(a)(15) largely remains applicable.

816 (Bankr. W.D. La. 1997). Thus, to determine the enforceability of a claim and thereby whether it may qualify under § 523(a)(15), an examination of state law is necessary. Pierce v. Pierce (In re Pierce), 323 B.R. 21, 32 (Bankr. D. Conn. 2005). In this case, the circuit court based its decree on the parties' orally represented property settlement agreement. The decree specified husband had responsibility for the MBNA credit card debt.

In Virginia, Code § 20-109.1 provides that in divorce proceedings a court "may affirm, ratify and incorporate" in a decree "any valid agreement between the parties, or provisions thereof, concerning the conditions of maintenance of the parties . . . or establishing or imposing any other condition or consideration, monetary or nonmonetary." Furthermore, when a court exercises this authority, the parties' agreement "shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Id.

The "parties are free to access the equitable powers of the court to enforce the decree, including the terms of the agreement." Campbell v. Campbell, 32 Va. App. 351, 356, 528 S.E.2d 145, 147 (2000). A court may enforce its decrees by holding non-compliant parties in contempt. Owney v. Owney, 8 Va. App. 255, 259, 379 S.E.2d 745, 748 (1989); see also Wilson v. Collins, 27 Va. App. 411, 424, 499 S.E.2d 560, 566 (1998). We have also held a court may enforce a decree ordering the sale of the marital home. Mayers v. Mayers, 15 Va. App. 587, 590, 425 S.E.2d 808, 810 (1993).

The decree ordering husband to pay the MBNA credit card debt was clearly an enforceable, legally binding obligation. The court's decree bound husband to responsibility for the debt and gave the court equitable powers if husband failed to fulfill his responsibility. The obligation thus qualifies as debt for purposes of the bankruptcy statute.

Accordingly, we conclude the circuit court erred in presuming husband would receive a discharge of the joint credit card debt in the bankruptcy proceedings. Neither the factual

- 10 -

circumstances of this case nor the governing legal principles of the bankruptcy statutes support the trial court's assumption that husband would be successful in obtaining a discharge of the joint credit card debt.[8] Thus, the circuit court's assumption of discharge was in error.

The Court also considers it speculative that the creditor will seek to collect from wife. No evidence was presented in this regard. Assuming husband does realize a discharge, it was improper for the circuit court to speculate wife would actually have to make payments without evidence to that extent. Thus, this case must be remanded for recalculation of spousal support without speculation upon a future result in the pending bankruptcy proceedings.

Having found that this case should be remanded for further proceedings based on the above reasons, the Court declines to consider the arguments regarding the extent to which husband's spousal support obligations should be reduced.

### C.  Whether to Award Attorney Fees and Costs

Wife requests the Court grant attorney fees and costs in connection with this appeal. O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Husband has largely prevailed in his appeal. "We deny wife's request for attorney's fees on appeal given husband's position as prevailing party . . . ." Smith v. Smith, 43 Va. App. 279, 291 n.6, 597 S.E.2d 250, 256 n.6 (2004). Therefore, attorney fees and costs are denied.

### CONCLUSION

For the foregoing reasons, the Court concludes the circuit court partially erred in considering husband's motion to suspend or reduce spousal support. On remand the trial court must compare current business expenses with those discerned in its prior December 22, 2005

---

[8] Furthermore, as one commentator recently noted, under 11 U.S.C. § 523(c)(1), an objection to discharge under § 523(a)(15) does not even need to be made before the bankruptcy proceedings end. James L. Musselman, Once Upon a Time in Bankruptcy Court: Sorting Out Liability of Marital Property for Marital Debt Is No Fairy Tale, 41 Fam. L.Q. 249, 268 n.97 (2007).

letter opinion to determine current income.  Further, although the court could consider a discharge of marital debt in bankruptcy where the other spouse remained liable, it was improper to assume husband would receive a discharge.  Even if the bankruptcy court did discharge the debt, the record lacks any evidence the creditors have sought to collect from wife.  Therefore, the Court reverses and remands the case for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>