COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia

ROLF PEMBERTON

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. HALEY, JR.
MARCH 31, 2020

v.       Record No. 1262-19-4

KATHRYN MALLEK

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

John K. Cottrell (James Ray Cottrell; Cottrell Fletcher & Cottrell PC,
on briefs), for appellant.

Camille A. Crandall (Hicks Crandall Juhl PC, on brief), for appellee.

Rolf Pemberton (father) appeals a circuit court ruling denying his "Motion to Enforce

Visitation Order and Appoint a Reunification Therapist" (father's/his motion). Father argues that

the circuit court erred in denying his motion and granting Kathryn Mallek's (mother) motion *in

limine*. Father also challenges the circuit court's attorney's fees award to mother. We find no error

and affirm the decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal, we view the evidence 'in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom.'" Bedell v. Price, 70 Va. App. 497, 500-01 (2019) (quoting Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 40 (2014)).

The parties married on June 10, 2000, and divorced on July 26, 2016. Three children were born of the marriage – one child in 2002 and twins in 2007. On June 23, 2016, the circuit court entered an order allowing mother and the children to relocate from Arlington to Charlottesville. The circuit court awarded joint legal custody of the children to mother and father, primary physical custody to mother during the school year, and primary physical custody to father during the summer. The order also included a visitation schedule and directed the parties to "select a therapist for the children who specialize[d] in working with children of separation and divorce to assist the children."

Thereafter, the parties had numerous hearings concerning custody and visitation disputes, especially the children's refusal to visit with father. The parties worked with Dr. Christopher Lane to address the custody and visitation concerns until December 19, 2016, when the circuit court ordered the parties to select a new reunification therapist to replace Dr. Lane. The parties, their counsel, and the children's guardian *ad litem* agreed to work with a case manager, a parenting coordinator, and child/family therapist to address the "children's ongoing visitation resistance and refusal and related issues in the family system."

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

On November 28, 2017, the parties appeared before the circuit court for a "review of the custody and visitation matters," and on December 4, 2017, the circuit court entered a "Final Custody, Visitation, and Support Order." The circuit court found that father had "attempted to scuttle the process of the children's relocation to Charlottesville," but the children were "thriving" in Charlottesville. The circuit court further found that father's "damaged relationship with the children" was partially due to his "constant misrepresentation[s]" to mother during the marriage about his whereabouts and his "romantic relationship with another woman." The circuit court also found that father "failed to provide the necessary emotional support to the children," and despite the circuit court's "best efforts to repair [father's] relationship with the children," he continued "to scuttle the process." The circuit court modified the previous custody and visitation order and held that mother would have "final decision-making" power in situations regarding the children. The circuit court also held that father would "have the right to visit with the children at their practices, sporting events, ceremonies, or similar curricular and extracurricular activities . . . as often as he wishes." The circuit court ordered father to arrange any visitation, outside of his attendance at the children's activities, directly with the children. The circuit court released the case manager, parenting coordinator, and guardian *ad litem* from further involvement with the family.[2]

On January 23, 2019, father filed his motion, which is the subject of this appeal, and alleged that he had had "little contact with his children despite his steady efforts" since the entry of the December 4, 2017 order. Father asserted that mother had "outright ignored or simply rejected any requests by [f]ather for reunification therapy for the children." Father requested that the circuit court grant his motion to enforce the order, appoint Dr. Cathleen Rea as a reunification therapist, and order the parties and children to participate in reunification therapy.

---

[2] Father did not appeal the circuit court's ruling.

Mother filed a motion *in limine* to exclude the testimony of Dr. Lane, whom father identified as an expert witness. In his discovery responses, father stated that he expected Dr. Lane to testify about "the negative impact on the children of not having a relationship with their father" and the benefit of working with Dr. Rea in reunification therapy. Mother objected to Dr. Lane's testimony because he had "no new material evidence" to provide the circuit court. Dr. Lane had not interacted with the family since November 2017, and mother asserted that "Dr. Lane's efforts to promote reunification were unsuccessful." After hearing the parties' arguments, the circuit court granted mother's motion *in limine*.

The circuit court subsequently heard the parties' evidence and arguments regarding father's motion. Father asked the circuit court to appoint Dr. Rea as a reunification therapist to assist father in coordinating visitation. Mother objected to father's motion and argued that father had not proven any material changes in circumstances since the entry of the last order. The circuit court took the matter under advisement and later issued its ruling denying father's motion. The circuit court continued the matter for a ruling on attorney's fees. The circuit court found that father's motion was "unwarranted" and "lacked a good faith basis," so it awarded mother $11,354.70 in attorney's fees. This appeal followed.

ANALYSIS

*Father's motion*

Father argues that the circuit court erred by denying his motion. Father asserts that he was not seeking to modify, but rather enforce, the visitation provisions of the December 2017 order. He contends, therefore, that the circuit court erred in considering whether there had been any material changes in circumstances.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Bedell, 70 Va. App. at 504 (quoting Farley v.

- 4 -

Farley, 9 Va. App. 326, 327-28 (1990)). "A trial court's determination with regard to visitation is reversible only upon a showing that the court abused its discretion." Id. (quoting Stadter v. Siperko, 52 Va. App. 81, 88 (2008)). "Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court." Id. (quoting Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 336 (1992)).

The visitation provisions of the December 4, 2017 order stated that father was to arrange visitation, beyond his attendance at the children's extracurricular activities, directly with the children. Father had not visited with the children since the entry of the previous order because the children would not speak with him. During the hearing on his motion, father told the circuit court that they should not be "leaving it just to [the children] to set up the visitation – there has to be some mechanism in place for the visitation to be arranged with the children." He asked the circuit court to (1) appoint Dr. Rea as a reunification therapist who could help him arrange visitation and (2) order the family, including mother and the children, "to attend reunification therapy with Dr. Rea with the goal of establishing and arranging visitation." Contrary to his arguments, father was not seeking to enforce the December 4, 2017 order; rather, he was asking for a modification of the order because his attempts to coordinate visitation directly with the children had failed. Accordingly, because father was actually seeking to modify the visitation order, the circuit court did not err in examining whether there had been a material change in circumstances since the last order.

"When a party has filed a petition to modify an existing visitation order, the courts must apply the Supreme Court's two-pronged test enunciated in Keel v. Keel, 225 Va. 606 (1983), to determine whether modification of that order is proper." Rhodes v. Lang, 66 Va. App. 702, 709 (2016). "That test asks, 'first, has there been a change in circumstances since the most recent

- 5 -

custody [or visitation] award; second, would a change in custody [or visitation] be in the best interests of the children.'" Id. (quoting Keel, 225 Va. at 611).

Throughout the hearing, the circuit court asked father about the change in circumstances, and despite his argument on appeal that the court applied an incorrect standard, father presented evidence about the change in circumstances and argued that his relationship with the children had changed since the last court order. He testified that his relationship with the children was "basically nonexistent" now and that he no longer had conversations with them because they would not speak with him. Father explained that when he had attended the children's sporting events, the children would not speak with him or visit with him. At the conclusion of all of the evidence, father asked the circuit court "to enforce its visitation order" because father had not visited with the children since the last order and "[t]hat is a huge change in circumstances that needs to be addressed."

In ruling from the bench, the circuit court found that the children were "thriving" and "doing very well." The circuit also found that father's relationship with his children was "the result of his historical interaction with them" and that mother had not interfered with father's relationship with the children. The circuit court noted that nothing in the record suggested that there would be a change in father's relationship with the children if it ordered that the children had to be driven to father or forced them to meet with him. The circuit court knew that the family had been involved in reunification therapy before, and it did "not know what the difference would be here" if they engaged in reunification therapy again. The circuit court concluded that "forced visitation is not the answer." The circuit court found that there were no material changes in circumstances and denied father's motion.

Father's arguments notwithstanding, the record supports the circuit court's findings that there had been no material changes in circumstances since the last court order. The circuit court

found that the issues father raised in his motion were the same issues that the circuit court had addressed previously. The circuit court found that "[c]onsiderable time and effort over the course of this case [had] been spent on custody, visitation, and reunification." The circuit court already had attempted to address father's visitation struggles by appointing a reunification therapist and ordering father to arrange any visitation, beyond his attendance at their extracurricular activities, with the children themselves. Despite those efforts, father's relationship with his children had not changed, and father presented no material change in circumstances that warranted the appointment of another reunification therapist.

Father further argues that the circuit court's refusal to appoint a reunification therapist placed him in "an impossible position" of coordinating visitation with the children because they refuse to speak with him. The circuit court, however, made a finding of fact that father's own actions had created the situation. The circuit court further held that there was "nothing in this record" to suggest that ordering reunification therapy again would yield a positive result.

Considering the entire record, we cannot say that the finder of fact was plainly wrong (or without any credible evidence) to support these findings of fact. Consequently, we hold that the circuit court did not err in denying father's motion.

*Mother's motion in limine*

Father argues that the circuit court erred in granting mother's motion *in limine* and excluding Dr. Lane's testimony. "Generally, the admissibility of evidence 'is within the broad discretion of the trial court, and a[n] [evidentiary] ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Surles v. Mayer, 48 Va. App. 146, 177 (2006) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16 (1988)) (brackets in original).

Father had identified Dr. Lane as an expert witness in his discovery and proffered that he expected Dr. Lane to "testify about the negative impact on the children of not having a

relationship with their father and why the entire family participating in reunification therapy with Dr. Rea would be consistent with their best interests." Dr. Lane had acted as a reunification therapist for the family in 2016, but had not had any contact with the family since the entry of the December 2017 order. At the hearing on mother's motion, father explained that the "limited purpose" of Dr. Lane's testimony was that he was familiar with Dr. Rea's curriculum *vitae* and could testify "about why this would be a good person to put in place to continue the reunification therapy in Charlottesville." Mother objected to Dr. Lane testifying and argued that the circuit court did not "need Dr. Lane to say there's an expert in Charlottesville who does reunification work." Mother did not object to Dr. Rea's qualifications or that she had "the capacity to do reunification work at all." Rather, mother objected to participating in reunification therapy "for the third time" and having Dr. Lane testify about "what's right for this family" when he had not had any contact with them since 2017.

The circuit court did not abuse its discretion by granting the motion *in limine*, especially considering the "limited purpose" of Dr. Lane's testimony concerning Dr. Rea's uncontested qualifications and Dr. Lane's lack of communication with the family in more than one year.

*Circuit court's award of attorney's fees*

Father argues that the circuit court abused its discretion by awarding mother $11,354.70 for her attorney's fees. Father asserts that his motion was made in good faith and that he "was merely seeking to obtain a needed intervention so he could have visitation with his children."

"[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Allen v. Allen, 66 Va. App. 586, 601 (2016) (quoting Richardson v. Richardson, 30 Va. App. 341, 351 (1999)). "An abuse of discretion occurs 'only "when reasonable jurists could not differ"' as to the proper decision." Id. (quoting Brandau v. Brandau, 52 Va. App. 632, 641 (2008)). "[A]fter considering 'the

circumstances of the parties' and 'the equities of the entire case,' a trial court may exercise its discretion and issue an award of attorney's fees and costs that is reasonable 'under all of the circumstances revealed by the record.'" Id. at 601-02 (quoting Mayer v. Corso-Mayer, 62 Va. App. 713, 734 (2014)).

Mother presented evidence that she had incurred over $20,000 in attorney's fees and costs, which equaled approximately half of her annual gross income. The circuit court stated that father's motion was "unwarranted" and placed mother "in financial hardship" because she had to incur "significant attorney's fees" to "re-litigate" the same issues. The circuit court found that father had "failed to recognize the [circuit court's] prior findings, thus, the motion for reunification lacked a good faith basis." The circuit court found that the issues in father's motion, specifically reunification therapy, were the same as previously ruled upon because "the reunification process in this case dates back to March 2017, when [the circuit court] ordered the appointment of a reunification therapist to provide reunification therapy for the purposes of reunifying [father] and the children." Considering the totality of the circumstances, the circuit court did not abuse its discretion by awarding $11,354.70 to mother for her attorney's fees.

*Appellate attorney's fees*

Both parties requested an award of attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). Since mother has prevailed in this appeal, we deny father's request for attorney's fees and costs. Rogers v. Rogers, 51 Va. App. 261, 274 (2008). Having reviewed and considered the entire record in this case, we grant mother's request for a reasonable amount of attorney's fees and costs incurred on appeal. We remand this case to the circuit court for

determination and award of the appropriate appellate attorney's fees and costs, which also should include any additional attorney's fees incurred at the remand hearing. Rule 5A:30(b).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. We remand this case to the circuit court for determination and award of the appropriate appellate attorney's fees, which also should include any additional attorney's fees incurred at the remand hearing.

Affirmed and remanded.